UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK TRONCO,<br>　　　　Plaintiff,<br><br>　　vs.<br><br>CHIEF JUDGE OF THE CIRCUIT COURT OF<br>COOK COUNTY, ILLINOIS,<br>ROBERT HARRIS,<br>YVONNE ZEHR,<br>KELLY THORNTON,<br>CAROLYN THOMAS,<br>　　　　Defendants. | JURY DEMANDED<br><br>No. |

## COMPLAINT

Plaintiff, Frank Tronco, employed by the Public Guardian of Cook County, Illinois, has instituted this action, through his attorney, Sheldon Nagelberg, based on reasonable cause that defendants Chief Judge of the Circuit Court of Cook County, Robert Harris, Yvonne Zehr, Kelly Thornton, and Carolyn Thomas, acting in their official and individual capacities, have jointly conspired and individually engaged to deprive Frank Tronco of his right of free speech and due process of law as protected by the U.S. Constitution and Illinois Constitution.

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. 1983, and 1985, the equal protection and due process clauses of the Fifth and Fourteenth Amendments, U.S. Constitution, and the Due Process and Free Speech

1

Clauses of the Illinois Constitution. Plaintiff asserts Illinois state law claims for the Illinois Constitutional violations, breach of contract, and intentional infliction of emotional distress.

2. Jurisdiction is conferred on plaintiffs' federal claims upon this United States District Court by 28 U.S.C. 1331, 1343, 42 U.S.C. 2000e-5(f), 42 U.S.C. 1981, 1983, 1985. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. 1391 because the events giving rise to this claim occurred in this District.

## THE PARTIES

4. Plaintiff Frank Tronco is employed as a clerk for the Public Guardian of Cook County. He is a citizen of the United States.

5. Defendant Chief Judge is an "employer" as defined in 42 U.S.C. 12111, 29 C.F.R. 1630.2. Defendant Chief Judge is responsible for the employment and management of the Cook County Public Guardian, which is funded by the Cook County Board, and federal funding.

6. Defendant Chief Judge, pursuant to a Collective Bargaining Agreement between himself and AFSCME Council 31, Local 3969, representing the employees in the Office of the Cook County Public Guardian, is the employer of the plaintiff, and has the duties and responsibilities vested in it by the laws and the Constitutions of the United States and the State of

Illinois. The Collective Bargaining Agreement also gives defendant Chief Judge the full authority and responsibility for directing the operations and determining the policy of the Cook County Public Guardian.

7. At all relevant times Defendant Robert Harris is the Public Guardian of the Office of the Cook County Public Guardian. Defendant Harris was appointed by the Chief Judge, and he administers, by direction of the Chief Judge, and the Collective Bargaining Agreement, the daily operation of the Cook County Public Guardian.

8. At all relevant times, defendant Yvonne Zehr, is the Chief Deputy Public Guardian.

9. At all relevant times Defendant Carolyn Thomas is the Director of Human Resources of the Cook County Public Guardian.

10. At all relevant times Defendant Kelly Thornton is a supervisor in the Cook County Public Guardian office..

## FACTS

11. Frank Tronco has been employed as a clerk in the Public Guardian office since 1994. His job performance has always met or exceeded expectations, and that unsolicited letters from fellow employees have praised his work and assistance to staff attorneys.

12. Article XI of the Collective Bargaining Agreement contains procedures to be used in the administration of discipline of employees.

13. Defendants created "Non-Harassment" and "Sexual Harassment" policies which they use to justify and support their claims that employees commit harassment.

14. On December 13, 2013 plaintiff was accused by defendant Carolyn Thomas of committing sexual harassment of an employee on December 9, 2013. Defendant Thomas sought to terminate plaintiff's employment, and expressed her intentions to defendants Harris, Zehr, and Thornton.

15. Plaintiff, with the assistance of the union, denied the allegation of sexual harassment. At a "Pre-Disciplinary Hearing" held on December 19, 2013 by defendant Thomas, testimony was heard with defendant Thornton testifying for the employer/administration, and plaintiff testifying on his behalf.

16. In her written findings of the December 19 testimony, defendant Thomas expressed her "frustration that [witness A] could not corroborate at least the conversation [complainant witness B] had with [plaintiff] ……… Because [witness A] did not corroborate [complainant witness B]'s statement I have to wonder if [complainant witness B] is embellishing what happened".

17. Defendant Thomas' written findings expressed her hope that the allegation of complainant witness B would have been the necessary event leading to the termination of plaintiff's employment. Defendant Thomas writes " When this was first brought to my attention, I was sure that Frank

4

would be terminated. After the investigation and hearing, the office does not have enough to terminate him."

18. Although she was left with no credible evidence to support the allegation of sexual harassment, defendant Thomas, with the approval of the defendants, ordered plaintiff to suffer a one day suspension and attend counseling for sexual harassment and hostile workplace violence.

19. On February 4, 2014 Frank Tronco was accused of racial harassment when he asked a fellow employee, who is African-American:

> "What are you eating, greens? He said no, so you said, "fried chicken? He said no and you asked, "What is it?, he told you it was chili."

This claimed conversation between the plaintiff and the other employee was not intended by plaintiff to be rooted in racial prejudice. Nor had Mr. Tronco ever exhibited a pattern of race discrimination.

20. As a result of this alleged statement the defendants suspended plaintiff without pay from February 11 to February 27, 2014, justifying such discipline by claiming it was a violation of the "Non-Harassment Policy". Defendant Zehr issued the suspension, claiming that plaintiff committed an act of "inappropriate interactions in the workplace".

21. In fact, the defendants "Non-Harassment Policy" was written and construed in vague terms, which permitted the defendants to recklessly use the "Policy" arbitrarily to carry out their personal likes or dislikes of employees.

5

22. Defendants Thornton and Thomas had a personal dislike of plaintiff, and would not separate their personal feelings from the law concerning harassment. Defendants Thornton's and Thomas' personal dislike of Mr. Tronco' speech caused them to not function in the workplace so as to distinguish between their subjective feelings and objective facts, thus resulting in an arbitrary and reckless abuse of the collective bargaining agreement in the administration of discipline.

23. Plaintiff used the grievance procedures within the Collective Bargaining Agreement to defend himself. As late as July 21, 2014, at a Step 3 grievance hearing, the employer's own counsel entered findings and a ruling denying plaintiff's grievance, stating that such remarks are "grossly inappropriate" and "violate not only Department Policy, but possibly local, state, and federal law regarding discrimination."

24. In truth, plaintiff's words did not violate local, state, or federal discrimination law. The defendants' findings supporting the suspension were made without sufficient evidence, were arbitrary, and evidenced a continued reckless pattern and practice of the defendants' utilization of their personal subjective dislikes of the plaintiff 's speech as justifying and supporting discipline, and attempted termination of plaintiff's employment.

25. The conduct of the defendants in disciplining Mr. Tronco for his speech has affected him to the degree that he experiences emotional distress where he feels that at his workplace he is "walking on eggshells", suffers

6

nightmares, frequently breaks out into sweats, and his nerves cause his body to shake when he enters the workplace building.

## COUNT ONE
### Violations of First Amendment Free Speech, Fourteenth Amendment Due Process Clauses, 42 U.S.C. 1983, 1985, Illinois Constitutional Free Speech and Due Process Clauses, Monell Claim.

26. Plaintiff incorporates and restates each of the above paragraphs 1 through 25 as if fully set forth herein.

27. Defendants have acted under color of state law when defendants deprived plaintiff of his federal rights of free speech and due process of law; and Illinois Constitutional rights of free speech and due process of law.

28. The reckless, arbitrary conduct of all defendants in their treatment of the plaintiff, evidenced the existence of a conspiracy for the purpose of depriving the plaintiff of his federal and state constitutional rights of free speech, and due process of law, create a hostile workplace, and terminate plaintiff's employment. To effect the goal of this conspiracy the defendants had a pattern and practice of distorting the rights enumerated within the Collective Bargaining Agreement, combined with the vagueness and unlawful standards of their "Non-Harassment" and Sexual Harassment" policies to impose punishments upon the plaintiff, which included suspensions and loss of wages.

...

29. As a direct and proximate result of defendants' violations, the plaintiff has suffered emotional distress, physical distress, threats of loss of employment, loss of wages.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against the defendants, and award compensatory and punitive damages, lost wages, costs, attorney fees, and whatever relief this Court may deem appropriate.

## COUNT TWO
### State Claim- Breach of Contract

30. Plaintiff incorporates and restates each paragraph 1 through 29 as if fully set forth herein.

31. The conduct of the defendants by reason of their behaviors in distorting the Collective Bargaining Agreement's rules concerning the imposition of discipline of the plaintiff evidenced a willful violation of the Collective Bargaining Agreement, and evidenced the arbitrary abuse of the Collective Bargaining Agreement to satisfy the defendants' conspiratorial goal to terminate the employment of the plaintiff.
Such conduct resulted in the plaintiff experiencing threats of termination of employment, emotional distress, physical distress, and loss of wages.

WHEREFORE, plaintiff prays that this Court enter judgment in his favor and against the defendants, and award compensatory and punitive damages, costs, attorney fees, and whatever further relief this Court may deem appropriate.

8

## COUNT THREE
### State Claim-Intentional Infliction of Emotional Distress.

32. Plaintiff incorporates and restates each paragraph 1 through 31 as if fully set forth herein.

33. The conduct of the defendants was extreme and outrageous.

34. The defendants intended to cause or recklessly or consciously disregarded the probability of causing emotional distress.

35. The Plaintiff suffered severe emotional distress.

36. The defendants' conduct actually or proximately caused the plaintiff's emotional distress.

WHEREFORE, plaintiff prays that this Court enter judgment in his favor and against the defendants, and award compensatory and punitive damages, costs, attorney fees, and whatever further relief this Court may deem appropriate.

Respectfully submitted,

/s/ SHELDON NAGELBERG
Attorney for Plaintiff

Sheldon Nagelberg
Sheldon Nagelberg, PC
53 West Jackson Boulevard
Suite 664
Chicago, Illinois 60604
Phone 312-305-5278
Email: sbnagelberglaw@att.net